IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD V. COLLINS,<br>    Petitioner,<br><br>v.<br><br>A. HEDGPETH, Warden, et al.<br>    Respondent. | CASE NO.   CIV S-07-1240 BJR<br><br>ORDER |

## INTRODUCTION

Petitioner is a California state prisoner who has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was found guilty by a jury of assault with a semiautomatic firearm and of being a convicted felon in possession of and carrying a concealed and loaded firearm. He contends that his conviction is not supported by substantial evidence and is the result of instructional errors. After having considered the petition, the respondent's answer, and the balance of the record, the court hereby finds and rules as follows.

## PROCEDURAL HISTORY

A jury found Petitioner guilty of being a convicted felon in possession of a firearm, carrying a concealed firearm, and carrying a loaded firearm in violation of Cal. Pen. Code §§ 12021(a)(1), 12025(b)(6) and 12031(a)(2)(F). The jury also convicted him of assault with a

semiautomatic firearm and found he personally used the firearm and caused great bodily injury in the commission of the offense. (Cal. Pen. Code. §§ 245(b), 12022.5(a) and 12022.7(a)). He was acquitted of discharging a firearm with gross negligence in violation of § 246.3. The trial court found that Petitioner had a prior conviction for a serious felony and had served a prior prison term. On September 16, 2005, the court sentenced him to an aggregate term of twenty-five years in state prison. Petitioner appealed and the Court of Appeal of the State of California, Third Appellate District, affirmed his judgment and sentence. He filed his writ for habeas corpus in the Eastern District of California on June 25, 2007. The case was transferred to this court on January 22, 2009. It is now ripe for review.

## FACTS

The facts of this case are set forth in the unpublished opinion of the Third District Court of Appeal dated January 10, 2007 (as modified on February 5, 2007), the relevant portion of which is summarized as follows:

> Dorinda Quintanilla is Petitioner's mother. On February 28, 2005, she met Petitioner and his fiancée, Kara Delozier at an AM/PM store. Upon arriving at the store, Quintanilla got into the front passenger seat of Delozier's vehicle. Petitioner was in the driver's seat and Delozier was in the backseat with her two young sons. Quintanilla kneeled on the front seat and leaned back to play with the children. While Quintanilla was playing with the boys, Petitioner and Delozier were talking and Quintanilla believed that an argument was starting. She testified that as she turned around, she heard a bang and felt "this warmth just rush through my leg." Her femur had been shattered by a bullet.
>
> When the police arrived at the scene, Petitioner told them that he thought his mother was the victim of a drive-by shooting. He said his mother was standing outside the vehicle when she was shot. However, upon learning that Petitioner may have dropped something over a wall near the vehicle, the police investigated and discovered a loaded, semiautomatic nine-millimeter pistol. They confronted Petitioner with the gun. He stated the gun belonged to Delozier. He said the gun was in the fold of the front passenger seat of the vehicle and when he moved the seat, the gun went off, injuring his mother. He got scared and threw the gun over the wall.

He acknowledged to the police that a gunshot residue test would probably reveal residue on his right hand.

Quintanilla was interviewed at the hospital by Officer Harbison. She told him that she had been kneeling backwards on the front seat playing with the children in the backseat when she saw Petitioner reach somewhere, and when she looked over, he was holding a gun. She reached for the gun, it went off, and she was shot.

At trial, Quintanilla testified that she did not remember saying that Petitioner had been "getting mad" in the vehicle, that he grabbed for something, or that he had a gun in his hand. She claimed she did not see Petitioner with a gun. Quintanilla also testified that she did not recall the questions Officer Harbison asked her in the hospital because she was receiving medication at the time and was "more incoherent than coherent."

Delozier was interviewed four months after the incident by the District Attorney's Office. She stated that the gun was hers and whenever she and Petitioner drove to the "south area," she hid the gun in the car and Petitioner did not know about the gun. Delozier claimed that she heard a spring break when Quintanilla kneeled on the front seat of the vehicle. Delozier was concerned about the gun so she reached forward to pull it out. As she did so, Petitioner, who was surprised to see the gun, also grabbed for it, as did Quintanilla, and the gun discharged. She explained that she did not admit this to the police on the day of the incident because she was afraid she would lose her children.

## GROUNDS FOR RELIEF

Petitioner raises the following grounds for relief:

1. His conviction for assault with a firearm is not supported by substantial evidence;

2. The trial court committed reversible instructional errors; and

3. He was denied effective assistance of counsel because his attorney failed to request a defense of accident instruction.

DISCUSSION

A.  *Standard of Review*

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petitioner for writ of habeas corpus may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  The AEDPA established a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotations omitted).  Only if the state court's decision does not meet the criteria set forth in § 2254(d)(1) does this court conduct a de novo review of the petitioner's habeas claims. *Panetti v. Quarterman*, 551 U.S. 930 (2007).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*.  The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

B.        *The Assault with a Semiautomatic Firearm Conviction*

Petitioner argues that the state court decisions sustaining his conviction violated his Fourteenth Amendment due process right to be convicted by evidence that proves his guilt beyond a reasonable doubt. As a matter of federal constitutional law, the "Due Process Clause protects the accused against conviction expect upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jaun H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) quoting *In re Winship*, 397 U.S. 358, 364 (1970). A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds. In *Jackson v. Virginia*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979). After the AEDPA, federal courts must apply the standards of *Jackson* with an additional layer of deference. 28 U.S.C. § 2254(d).

This court must determine whether the decision of the California Court of Appeal reflected an unreasonable application of *Jackson* and *Winship* to the facts of this case. *Juan H.*, 408 F.3d at 1275. In conducting this inquiry, this court is aware of "the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." *Id.* quoting *Wright v. West*, 505 U.S. 277, 296-97 (1992) (plurality opinion). The deference required, however, is not without limit. *Juan H.*, 408 F.3d at 1275 citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Section 245(b) of the California code provides that it is a felony to commit an assault upon the person of another with a semiautomatic firearm. "Assault requires the willful

5

commission of an act that by its nature will probably and directly result in injury to another (i.e. battery), and with knowledge of the facts sufficient to establish that the act by its nature will probably and directly result in such injury." *People v. Miceli*, 104 Cal. App.4th 256, 269 (2002). Therefore, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. *People v. Williams*, 26 Cal.4th 779, 788 (2001). He may not be convicted based on facts he did not know but should have known. *Id*. He, however, need not be subjectively aware of the risk that a battery might occur. *Id*.

Petitioner asks this court to interpret the evidence in the record in a light most favorable to him. In other words, unknown to Petitioner, his girlfriend hid the gun in the fold of the front passenger seat and then reached over the back of the front passenger seat and pulled the gun out when she heard a "crack." The Petitioner was surprised to see the gun, reached for it and the gun went off, striking his mother. Under those facts, Petitioner argues, a reasonable trier of fact could not convict him of assault.

Petitioner misperceives the role of federal court in a habeas proceeding challenging a state-court conviction. This court is precluded from either re-weighing the evidence or assessing the credibility of the witnesses. Under *Jackson*, the role of this court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain a conviction. That such evidence exists is clearly established by the evidence in this case.

Quintanilla's pretrial statement that she saw Petitioner reach for something and then hold a gun in his hand was presented at trial. As the Appellate Court stated:

> The jury obviously found that Quintanilla's pretrial statements were credible. Those statements, along with her testimony and other evidence introduced at trial, led to a reasonable inference that Petitioner grabbed the gun and pointed it at Delozier, with

> whom he was arguing, thereby prompting Quintanilla to reach for the semiautomatic firearm in order to prevent what she thought was Petitioner's intention to shoot Delozier. Based on this evidence, a reasonable trier of fact could have drawn the reasonable inference that Petitioner pointed the gun at either Delozier or Quintanilla.

Lodged Doc. 4 at 5-6. From that inference, a reasonable trier of fact could conclude that such an act, the act of pointing a loaded gun in a car full of people, including young children, would directly, naturally and probably result in battery. *See Williams*, 26 Cal.4th at 790 (holding that assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur).

      Petitioner argues that the prosecution failed to prove that he pointed the gun at anyone in the car or that he actually pulled the trigger. *See* Dk. No. 1 at 13. Petitioner seems to be arguing that the prosecution failed to provide direct evidence of the assault. However, direct evidence is not required for a jury to find guilt. *See* CALJIC No. 2.00. As previously discussed, sufficient evidence was presented for the jury to reasonably draw the inference that Petitioner pointed the gun in a menacing manner. It was not necessary for the prosecution to prove that Petitioner actually pulled the trigger of the gun. The mere act of pointing the gun constituted assault with a firearm. *See People v. Colantuono*, 7 Cal.4th 206, 219 (1994).[1]

      In sum, the California Court of Appeal reviewed the evidence in the record utilizing the proper standard and found it sufficient. No more was required. The Appellate Court's factual determinations were not unreasonable in light of the evidence presented at trial nor contrary to

---

[1] Petitioner makes much of the fact that the state never conducted fingerprint or gun residue testing despite the fact that the police allegedly requested that the tests be done. He attaches a letter from his trial counsel as evidence of this. *See* Dk. No. 7, Ex. A. However, the court notes that Petitioner's counsel also states that she used the lack of testing as part of his defense. The fact that the tests were not conducted was evidence that the police did a "poor investigation" and should give the "jury reasonable doubt as to who actually shot the gun." *Id*. Clearly, the jury rejected this argument.

*Jackson*. Petitioner has failed to show that the decision of the California courts was contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of the facts. He has therefore failed to meet his burden under 28 U.S.C/ § 2254(d).

C.      *The Trial Court's Failure to Instruct Jury on the Defense of Accident*

Next Petitioner alleges that the trial court committed reversible error by failing to *sua sponte* instruct the jury on the defense of accident because there was substantial evidence to support the instruction and the defense presented the theory that the shooting was an accident. *See* Dk. No. 1 at 16. Petitioner raised this claim in his direct appeal and the appellate court rejected it, holding that even if the trial court should have given the requested instruction, its failure to do so was harmless since the factual question posed by the omitted instruction—whether Petitioner formed the mental state necessary to make his actions a crime—was necessarily resolved adversely to Petitioner under other instructions given by the court. *See* Lodged Doc. No. 4 at 8.

Jury instructions are normally a matter of state law. *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993) citing *Estelle v. McGuire*, 502 U.S. 62 (1991) (stating that instructional errors of state law generally may not form the basis for federal habeas relief). The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas relief. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the CALJIC model." *Estelle*, 502 U.S. at 72. On federal habeas, the issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id*. quoting *Cupp v. Naughten*, 414 U.S.

8

141, 147 (1973). The burden on the habeas petitioner is "especially heavy" where, as here, the alleged error involves the failure to give an instruction. *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) quoting *Hendricks v. Vasquez*, 974 F.2d 1099, 1106 (9th Cir. 1992) (as amended).

Therefore, "[f]ailure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable. *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004) (citation omitted). To obtain relief, Petitioner must show that the alleged instructional error had substantial and injurious effect or influence in determining the jury's verdict. *Clark*, 450 F.3d at 905. A "substantial and injurious effect" means a "reasonable probability" that the jury would have arrived at a different verdict had the instruction been given. *Id.* at 916. In order to make this determination, this court must consider: (1) the weight of the evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge. *Byrd v. Lewis*, 566 F.3d 855, 860 (9th Cir. 2009) citing *Beardslee*, 358 F.3d at 578.

Here, even if the trial court should have *sua sponte* instructed the jury on accident, the court's failure to do so did not have a "substantial and injurious effect" on the jury's verdict. Petitioner was convicted of assault with a semiautomatic firearm and personally using a gun in the commission of a crime. Therefore, the jury necessarily found that Petitioner intentionally displayed the firearm in a menacing manner.[2] As such, Petitioner's alleged defense that the gun was accidentally discharged, even if accepted as true by the jury, would not have absolved him of the crime of assault. In the absence of prejudice, Petitioner's claim of ineffective assistance of

---

[2] In order to convict Petitioner of assault with a semiautomatic firearm, the jury must find one of the following, that Petitioner: (1) intentionally displayed a firearm in a menacing manner; or (2) intentionally fired a firearm; or (3) intentionally struck or hit a human being with it. CALJIC No. 17.19. There was no evidence presented at trial that Quintanilla was hit with the gun, and, by acquitting Petitioner of discharging a firearm with gross negligence, the jury found that he did not willfully discharge the gun. Petitioner mistakenly focuses on the shooting rather than the presentation of the loaded firearm, which completed the crime of assault. *See People v. Colantuono*, 7 Cal.4th at 219.

counsel also fails. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984). Accordingly, the appellate court's ruling was not contrary to or an unreasonable application of clearly established Federal law.

D.        *The Supplemental Jury Instruction*

Next, Petitioner contends that the trial court coerced a verdict from the jury when it read a supplemental instruction after the jury indicated that it was unable to reach a verdict on the assault charge. Whether the comments and conduct of the trial judge infringed Petitioner's due process right to an impartial jury and fair trial turns on whether "the trial judge's inquiry would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision." *Jiminez v. Myers*, 40 F.3d 976, 979 (9th Cir. 1994) quoting *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983). This court must consider whether the trial court's actions and statements were coercive in the totality of the circumstances. *See Locks*, 703 F.3d at 406-407 ("the inquiry by the judge must be viewed in light of the context in which it was made, not in isolation) (citations omitted); *United States v. Seawell*, 550 F.2d 1159, 1163 (9th Cir. 1977) ("the general test of whether a supplemental jury instruction is in error is to consider all the circumstances to determine if the instruction was coercive") (citations omitted).

In the present case, in the late morning on its third day of deliberations, the jury sent the trial judge the following communication:

> We have come to a conclusion on four out of five counts.
> We cannot unanimously vote on count one. Where should
> we go from here?

Lodged Doc. No. 9 at 148, 150. Thereafter, the court questioned the jury and the foreperson indicated that the jury was deadlocked. She informed the court that the jury had voted five times in regard to the assault charge and indicated that there was disagreement among the jurors

10

regarding the instructions and how to interpret them. In response to further inquiry from the court, the foreperson stated that the confusion was over the definition of the words "willfully or intent."[3] The foreperson represented that the jurors were in disagreement in regard to their initial question to the court—whether holding a loaded gun constitutes assault. She further indicated that the jury did not agree on the facts in regard to that issue, and that in applying those facts to the law they reached different conclusions. Five of the jurors indicated that they agreed with the foreperson's representations, and the other six jurors expressed that they disagreed. After an unreported bench conference and over the objection of defense counsel, the court read the jury a supplemental instruction. The supplemental instruction was substantially similar to the instruction given in *People v. Moore*, 96 Cal.4th 1105 (2002), an instruction previously accepted as noncoercive by the California Appellate Court.

Petitioner argues that the supplemental instruction was coercive. He concedes that the foreperson did not reveal the split in the jury's votes, but nevertheless, it was clear to the jurors that the expectation during the renewed deliberations was that some of the jurors would change their votes so that a verdict could be reached. Further, Petitioner argues, the trial court did not

---

[3] The jury had previously sent the following communication to the trial judge: "Is (sic) a person holding a loaded gun constitute an assault." Lodge Doc. No. 9 at 134, 140. After conferring with counsel, the court responded: "You need to apply the facts, as you first unanimously find them to be, to the law and in this way answer your question. Please reread instructions 1.00 on page 3 and 4, 9.00 and 9.01 on page 2 and instructions 9.00 "O" and 9.01 "A" on page 13, which defines your duties as jurors and the elements of the assault for you." *Id*. at 137. After a few more hours of deliberation, the jury sent the judge the following question: "Clarification on pg 9-9.00 ¶ 'The word 'willfully' means that the person committing the act did so intentionally. However, an assault does not require an intent to cause injury to another person, or an actual awareness of the risk that injury might occur to another person.' There seems to be a contradiction. Can you clarify the word 'intentionally' & 'intent.' *Id*. at 141. The court responded: "There is no contradiction. In instruction 9.0 the word 'willfully describes the act or any action that by its nature would probably and directly result in the application of physical force on another. This does not refer to or describe any specific intent experienced by the defendant at the time of the action. All of the crimes charged are called 'general intent' crimes. This is explained more fully in instruction 3.30, which you should reread. The people do not have to show that the defendant intended to cause injury by his willful action, or that he was even aware of the risk injury. A simple 'assault' has been committed if all the elements of 9.00 and 9.01 are met. If the assault was committed with a semiautomatic firearm, then the crime of assault with a semiautomatic firearm has been committed." *Id*. at 135-147.

specifically remind the jurors that they should not surrender their individual opinions merely because a majority of jurors had taken a different view of the case.

Petitioner's claim is without merit. The instruction given in this case is nearly identical to the instruction given in *People v. Moore*, 96 Cal.4th 1105 (2002) in which the California Appellate Court commended the author for drafting such a noncoercive instruction to guide the jury in trying to reach a verdict, if possible. The challenged instruction does not impliedly direct jurors in the minority to rethink their position in light of the majority's views. To the contrary, the trial court instructed the jury that "[i]t is your duty to deliberate with the goal of arriving at a verdict on the charge *if you can do so without violence to your individual judgment*. Both the People and the defendant are entitled to *the individual judgment of each juror*. Lodged Doc. No. 10 at 370 (emphasis added). The trial court did not indicate that a verdict had to be reached, it did not threaten to prolong deliberations, and it did not mention possible reprisals for failing to return a verdict. The court simply reminded the jurors of their duty to deliberate.

Petitioner's reliance on *Jimenez* is misplaced as *Jimenez* is easily distinguishable from the present case. In *Jimenez*, the Ninth Circuit granted defendant's petition for writ of habeas corpus because it held that the trial judge improperly gave a "de facto" *Allen* charge under the circumstances by telling the jurors he approved of the fact they were gradually reaching unanimity. *Jimenez*, 40 F.3d at 980. "After the first impasse, by eliciting the progression in the voting, determining it was moving in one direction, expressing his approval of the progression, and telling the jury to continue its deliberations, the trial court effectively instructed the jurors to make every effort to reach a unanimous verdict." *Id*. at 980. In addition, in *Jimenez*, the trial court was aware that there was a single hold-out juror. *Id*. at 981. In contrast, in this matter the trial court did not express its approval for the movement of minority jurors toward the majority,

nor was there an indication that only a single hold-out juror existed. In fact, the record contains no indication that the trial court was aware of the numerical split of the jury, or what the division was. Petitioner has failed to meet his burden under 28 U.S.C. § 2254(d). Consequently, this claim fails.

## CONCLUSION

Based on the foregoing, the court denies petitioner's petition for writ of habeas corpus. The case is hereby dismissed.

DATED this 16th day of September, 2009.

       /s/ Barbara Jacobs Rothstein

Barbara Jacobs Rothstein
U.S. District Court Judge